# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

**IN RE:**

**ALDO HUMBERTO CORDOVA
AND
IVONNE RUBACALBA CORDOVA,**


**DEBTORS.**

**CASE NO.: 1 2-31893**

**SMALL BUSINESS CASE
CHAPTER 11**


## ALDO HUMBERTO CORDOVA AND IVONNE RUBACALBA CORDOVA'S DISCLOSURE STATEMENT, DATED JULY 26, 2013

Proposed By: Aldo Humberto Cordova and Ivonne Ruvacalba Cordova
Dated: July 26, 2013

Submitted by:

Sidney J. Diamond
Omar Maynez
3800 N. Mesa, Suite B-3
El Paso, Texas 79902
(915) 532-3327 (Voice)
(915) 532-3355 (Fax)
sidney@sidneydiamond.com
Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| IN RE:<br><br>**ALDO HUMBERTO CORDOVA**<br>**AND**<br>**IVONNE RUBACALBA CORDOVA,**<br><br>**DEBTORS.** | **CASE NO.:  1 2-31893**<br><br>**SMALL BUSINESS CASE**<br>**CHAPTER 11** |

**ALDO HUMBERTO CORDOVA AND IVONNE RUBACALBA CORDOVA'S**
**DISCLOSURE STATEMENT, DATED JULY 26, 2013**

## Table of Contents

I.    INTRODUCTION ................................................................................................................. 4

  A.   Purpose of This Document ................................................................................................ 4

  B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ....................... 5

    1.   Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan. ..................................................................................................................................... 5

    2.   Deadline For Voting to Accept or Reject the Plan ........................................................ 5

    3.   Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan. .............. 5

    4.   Identity of Person to Contact for More Information ...................................................... 5

  C.   Disclaimer ......................................................................................................................... 6

II.   BACKGROUND ................................................................................................................. 6

  A.   Description and History of the Debtors' Business. ............................................................ 6

  B.   Events Leading to Chapter 11 Filing ................................................................................ 6

  C.   Significant Events During the Bankruptcy Case ............................................................... 6

  D.   Projected Recovery of Avoidable Transfers ..................................................................... 6

  E.   Non-bankruptcy Causes of Action .................................................................................... 7

  F.   Claims Objections ............................................................................................................. 7

  G.   Current and Historical Financial Conditions ..................................................................... 7

III.   SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS.................................................................................................................. 8

  A.   What is the Purpose of the Plan of Reorganization?........................................................ 8

  B.   Unclassified Claims .......................................................................................................... 8

     1.   Administrative Expenses.............................................................................................. 8

     2.   Priority Tax Claims...................................................................................................... 8

  C.   Classes of Claims and Equity Interests ............................................................................ 9

     1.   Secured Claims ............................................................................................................ 9

     2.   Priority Unsecured Claims ......................................................................................... 13

     3.   General Unsecured Claims......................................................................................... 13

     4.   Equity Interest Holders ............................................................................................. 15

  D.   Means of Implementing the Plan .................................................................................... 15

     1.   Source of Payments.................................................................................................... 15

  E.   Risk Factors .................................................................................................................... 16

  F.   Executory Contracts and Unexpired Leases ................................................................... 16

  G.   Tax Consequences of Plan .............................................................................................. 17

IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES ............................................ 18

  A.   Who May Vote or Object................................................................................................ 18

     1.   What Is an Allowed Claim or an Allowed Equity Interest?....................................... 18

     2.   What Is an Impaired Claim or Impaired Equity Interest? .......................................... 19

     3.   Who is Not Entitled to Vote....................................................................................... 19

     4.   Who Can Vote in More Than One Class .................................................................... 19

  B.   Votes Necessary to Confirm the Plan ............................................................................. 20

     1.   Votes Necessary for a Class to Accept the Plan ........................................................ 20

     2.   Treatment of Nonaccepting Classes........................................................................... 20

  C.   Liquidation Analysis ....................................................................................................... 20

  D.   Feasibility........................................................................................................................ 20

     1.   Ability to Initially Fund Plan ..................................................................................... 21

     2.   Ability to Make Future Plan Payments and Operate Without Further Reorganization.............. 21

V.   EFFECT OF CONFIRMATION OF PLAN ........................................................................ 21

  A.   Discharge of the Debtors................................................................................................. 21

  B.   Modification of Plan ....................................................................................................... 21

  C.   Final Decree .................................................................................................................... 22

## I. <u>INTRODUCTION</u>

This is the disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of **Aldo Humberto Cordova and Ivonne Rubacalba Cordova (the "Debtors")**. This Disclosure Statement contains information about the Debtors and describes the Plan of Reorganization (the "Plan") filed by the Aldo Humberto Cordova and Ivonne Rubacalba Cordova on July 27, 2013.   A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 7 through 12 of this Disclosure Statement.   General unsecured creditors are classified in Class 8. Creditors in Class 8 holding allowed unsecured claim will a paid in full in paid in sixty (60) equal monthly installments pro-rata, beginning the first day of the first full month following the effective date until paid, up to a maximum of $25,000.00.

### A.  Purpose of This Document

This Disclosure Statement describes:

The Debtors and significant events during the bankruptcy case;

How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed);

Who can vote on or object to the Plan;

What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;

Why Aldo Humberto Cordova and Ivonne Ruvalcalba Cordova believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and, the effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.   This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement.   This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**1.  *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan.***

The hearing at which the Court will determine whether to ***finally approve this Disclosure Statement and confirm the Plan*** will take place on _____, at _____, in United States Bankruptcy Courtroom, located on the fourth floor, 511 E. San Antonio, El Paso, Texas, 79901.

**2.  *Deadline For Voting to Accept or Reject the Plan*.**

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to:

Sidney J. Diamond
DIAMOND LAW
3800 N. Mesa Street, Suite B-3
El Paso, Texas 79902.
(915) 532-3327  V oice
(915) 532-3355   Fax
sidney@sidneydiamond.com

See Section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by no later than 5:00 p.m. Mountain Time on _____, 2013, or it will not be counted.

**3.  *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan.***

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Sidney J. Diamond, whose address, telephone number, fax number and email address are set forth in the following paragraph, by no later than 5:00 p.m. Mountain Time on _____, 2013.

**4.  *Identity of Person to Contact for More Information***

If you want additional information about the Plan, you should contact:

Sidney J. Diamond

DIAMOND LAW
3800 N. Mesa Street, Suite B-3
El Paso, Texas 79902.
(915) 532-3327  V oice
(915) 532-3355  Fax
sidney@sidneydiamond.com

**C.    Disclaimer**

*The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.   The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.   The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.   Objections to the adequacy of this Disclosure Statement may be filed until _____, 2013.*

## II.    BACKGROUND

### A.  Description and History of the Debtors' Business.

Debtors have operated a freight business for the past 13 years, they   initially operated as a sole proprietorship, until 2011 when they formed Fletes del Noroeste, LLC.   Until 2011, Debtors operated solely as owner-operators contracted to Timeline Integrated, Inc. In 2011, Timeline Integrated, Inc., ceased operations in a disorderly manner and without warning. Debtors then began operating their business independently but due to the losses caused by Timely Integrated, Inc's closing, were unable to keep up with their tax obligations.

### B.  Events Leading to Chapter 11 Filing

Debtors' primary reason for seeking reorganization are unpaid taxes due to the United States Internal Revenue Service.

### C.  Significant Events During the Bankruptcy Case

There have been no significant event during this bankruptcy case except that the Debtors have stabilized their business and returned to profitability.   The Debtors business subleased a portion of the real estate they own for $600.00 a month in May of 2013.

### D.  Projected Recovery of Avoidable Transfers

The Debtors do not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### E.  Non-bankruptcy Causes of Action

In a non-bankruptcy context, two prepetition and one post-petition lawsuits have been filed in state court against Debtors and/or their business.

a)  A  lawsuit filed against Debtor Aldo Cordova and his prior business entity, Ilca Carriers, LLC The oldest of the lawsuits was filed in the year 2011 and arose from an accident involving one of Debtors' semi-trucks. An unknown amount was paid to Plaintiff by the insurance for Timely Integrated, Inc., which covered the Debtors' truck at the time of the accident. However, the Plaintiff in the lawsuit, Gabriel Garcia, is seeking an additional $50,000.00, in damages..

b)  A  lawsuit filed prepetition in Midland County, Texas, which does not name either of the Debtors individually as Defendants. Also arising from an accident in which an electric pole was damaged by one of Debtors' semi-trucks.  Upon information and belief, there is insurance coverage in sufficient amount to cover the damages sought by the Plaintiff in that lawsuit, which amount to less than $6,000.00. The insurance for Timely Integrated, Inc., covered the Debtors' truck at the time of the accident.

c)  A  lawsuit for wages filed against Aldo Cordova, Individually, . Filed on July 15, 2013, by Marcelino Roberto Arredondo, for allegedly unpaid wages in the approximate amount of $3,000.00.   Debtors' schedules did not include Mr. Arredondo as a potential creditor because Debtors believed the dispute had already been resolved administratively in Debtors' favor by the Texas Workforce Commission.

### F.  Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtors reserve the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.   The procedures for resolving disputed claims are set forth in Article V of the Plan.

### G.  Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit B.

The Debtors' most recent financial statements issued before bankruptcy, each of which was filed with the Court, are set forth in Exhibit C.[1]

The most recent post-petition operating report filed since the commencement of the Debtors' bankruptcy case are set forth in Exhibit D.   A summary of the Debtors' periodic operating reports filed since the commencement of the Debtors' bankruptcy case is set forth in Exhibit D.

---

[1] Exhibit C has intentionally left blank.

### III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

#### A.  What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.   The Plan also states whether each class of claims or equity interests is impaired or unimpaired.   If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

#### B.  Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan.   They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.   As such, the Plan Proponent has *not* placed the following claims in any class:

#### 1.  *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtors' chapter 11 case which are allowed under § 507(a)(2) of the Code.   Administrative expenses also include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.   The Code requires all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtors' estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Sidney Diamond Attorneys Fees | $7,500.00 | To be paid in 12 equal monthly installments beginning the first day of the first full month following the effective date |

#### 2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.   Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtors' estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Service | $22,444.01 | Will be paid in sixty equal monthly installments, with thereon on at the rate of   3% beginning the first day of the first full month following the Effective Date and a like payment thereafter until paid in full |
| Texas Workforce Commission | $535.70 | Will be paid by in full on the first day of the first full month following the Effective Date. |

### C.  Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1.  *Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under . § 506 of the Code.   If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart identifies the Plan's proposed treatment of Class 1 through Class 7, which contain secured claims against the Debtors:

| Class# | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | Secured   claim o f   Bank of America, N.A. secured b y a first lien on t he pr operty  at 10905 Willie M ays, E  l P  aso, T  X 79934 i n t he a mount o f T hree Thousand F our H undred  Fifty Three a  nd 52/  100 D  ollars ($3,453.52). | Unimpaired | Terms o f c ontract w ill b e adopted,  beginning on t he first d ay o f th e  first f ull month f    ollowing t     he Effective Date. |

| 2 | Secured claim of Delbert & Jayne McElroy in the amount of One Hundred Twenty Two Thousand Six Hundred Eighteen and 79/100 Dollars $122,618.79, secured by a first lien on the real property located at 12850 Harnoss Dr., El Paso, TX 79928 | Impaired | Payments made to the Secured Party from the filing date through the effective dates shall be credit first to interest and then to principal. The Allowed Secured Claim shall be paid on the basis of a thirty year amortization schedule with interest at the rate of 5.25% with a ten year call. The terms and conditions of the loan documents between the parties are hereby adopted in full, without alteration, except as modified herein. |
| 3 | Secured claim of GECU in the amount of Four Thousand Sixty Eight and 54/100 Dollars ($4,068.54) secured by a lien on a 2005 Ford F-250 Lariat Pickup. | Impaired | The allowed secured claim shall be paid in 60 equal monthly installments with interest thereon at the rate of 5.25% beginning the first day of the first full month following the effective date. The terms and conditions of the loan documents between the parties are hereby adopted in full, without alteration, except as modified herein. |
| 4 | Secured claim of HSBC Retail Services in the amount of Twelve Hundred Dollars ( $1,200.00) secured by a lien on a 2005 Polaris Quad. | Impaired | The allowed Secured Claim of HSBC shall be paid in 60 equal monthly installments with interest thereon at 5.25 % beginning on the first full day of the first full month following the Effective Date. The terms and |

| | | | |
|---|---|---|---|
| | | | conditions of the loan documents between the parties are hereby adopted in full, without alteration, except as modified herein. |
| 5 | Secured claim of Internal Revenue Service in the amount of Fifty Seven Thousand Two Hundred Sixty Two and 99/100 Dollars ($57,262.99).secured by all real and personal property owned by the Debtors | Impaired | The allowed secured claim in the amount of $57,262.99 shall be paid in 120 equal monthly installments of principal and interest, with interest at the rate of 3% beginning the first day of the first full month following the effective date. |
| 6 | Secured claim of MHC Financial Services in the amount of Three Thousand Nine Hundred Ninety One and 47/100 Dollars ($3,991.47) secured by a 2005 Kenworth T600B | Impaired | The allowed secured claim shall be paid in 60 equal monthly installments with interest thereon at the rate of 5.25% beginning the first day of the first full month following the effective date.<br><br>The terms and conditions of the loan documents between the parties are hereby adopted in full, without alteration, except as modified herein. |
| 7 | Secured claim of City of El Paso in the amount of Seven Thousand Four Hundred Thirty Six and 24/100 Dollars ($7,436.24) secured by the property located at 12850 Harnoss Dr., El Paso, TX 79928 | Impaired | The allowed secured claim shall be paid in 60 equal monthly installments with interest thereon at the rate of 12% beginning the first day of the first full month following the effective date.<br><br>Should the reorganized debtors fail to make any payments as required in this Plan, the |

| | | | | City o f E l P aso s hall provide w ritten not ice of that de fault a nd s end written n otice b y certified mail to d ebtors' counsel advising of t hat de fault, and pr oviding t he reorganized debtors within a period of ten (10) days to cure t he d efault. In t he event that the default is not cured within ten (10) days, the C ity o f E l P aso ma y, without f urther or der of this Court, pursue all of its rights an d remedies available t o i t u nder t he Texas P roperty T ax C ode to c ollect th e f ull a mount of al l t axes, p enalties and interest owed Additionally, the failure to timely p ay post-confirmation ta xes while t he r eorganized debtors is in repayment of any p re-petition d ebt s hall be c onsidered an e vent of default. The C ity o f El Paso s hall provide de btors counsel with written notice of t hat de fault a nd a t en (10) da y opportunity to cure s aid d efault. In t he event t hat t he reorganized debtors fail to timely cure the pos t- confirmation default, the City of El Paso may pr oceed w ithout further o rder o f t his c ourt to co llect t axes, p enalties and interest owed. The debtors shall be entitled to no m ore t han one ( 1) Notice o f D efault. In t he |
| --- | --- | --- | --- | --- |

| | | | event of a s econd ( 2nd) default, the City of El Paso may pur sue a ll r ights a nd remedies available to it under t he T exas P roperty Tax C ode in s tate d istrict court w ithout or der from this court. |
|---|---|---|---|

### 2.  *Priority Unsecured Claims*

Certain priority claims that are referred to §507(a)(1),(4),(5),(6), and (7) of the Code are required to be placed in classes.   The Code requires that each holder of such claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.   However, a class of holders of such claims may vote to accept a different treatment.

There are no Priority Unsecured Claims owed by the Debtors as set forth above.

### 3.  *General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under. § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 8, which contains general unsecured claims against the Debtors.

| CLASS 8 GENERAL UNSECURED CLAIMS | | | |
|---|---|---|---|
| **Claimant** | **Amount** | **POC** | **To Be Objected To** |
| Marcelino R. Arredondo | $ 1.00 | No | Yes |

| | | | |
|---|---|---|---|
| Gabriel Garcia | $ 1.00 | No | Yes |
| Bank of America, N.A. | $ 7,611.00 | No | Yes[2] |
| CBE group | $ 667.00 | No | Yes |
| Bureaus Investments Group Portfolio[3] | $ 3,249.65 | Yes | No |
| HSBC Bank | $ 153.00 | No | Yes |
| Hugo Madrid | $ 1.00 | No | No |
| Pierce & Little, PC | $ 1.00 | No | No |
| The Truck Store, LLC | $ 1.00 | No | No |
| El Paso Electric Co. | $136.68 | Yes<br>Claim #11 | No |
| Internal Revenue Service | $6,801.20 | Yes<br>Claim #8 | No |
| Southwestern Bell Telephone Co | $450.79 | Yes<br>Claim #9 | No |
| Sprint Nextel | $756.50 | Yes<br>Claim #2 | No |

---

[2] This claim will be objected to on statute of limitations grounds.
[3] A proof of claim was filed by this creditor on a claim original scheduled for Capital One Retail Card.

| Bank of America, NA | $ 690.91 | Yes Claim #1 | No |
|---|---|---|---|
| **TOTAL** | **$ 20,521.73** | | |

      The allowed unsecured claims will be paid 100% in 60 equal monthly installments, pro-rata, beginning the first day of the first full month following the effective date, up to a maximum of $25,000.00.   Claims in this class presently total $20,521.73.[4]

### 4. *Equity Interest Holders*

      Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.   In a corporation, entities holding preferred or common stock are equity interest holders.   In a partnership, equity interest holders include both general and limited partners.   In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the debtor is the equity interest holder. In the case of an individual it is the debtor's interest in retained property of the estate.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 9 | Retained Interest | Impaired | Debtors will retain their interest in all property of the estate both exempt and nonexempt. |

### D.  Means of Implementing the Plan

### 1.  *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

Distributions under the Plan shall be funded by the income derived by Debtors from their business, Fletes Del Noroeste, LLC., in the amount of $6,600.00 a month.

---

[4]  A lawsuit for a pre-petition claim by an ex-employee in the amount of $3,000.00 has been filed in the Justice of the Peace Court, which claim the Debtors believe is without merit.

### E. Risk Factors

The proposed Plan has the following risks:

a) Economic Conditions:  Economic conditions in general and the economy of El Paso and areas of New Mexico could have a dramatic adverse impact upon Debtors' business. While economic conditions in El Paso and New Mexico have been stable or growing slightly due to the expansion of various military installations the tonnage volume has decreased sharply. Although many trucking companies have and continue to leave the Industry, it still remains slightly over saturated.

b) Equipment Costs: The cost of new tractors and trailers continue to increase due to the new energy efficient components being used to satisfy governmental standards.  O nce the Industry has balanced out its capacity, used equipment costs will drastically increase since trucking companies are hesitant to invest in the new technology.

c) Fuel Costs:  The price of diesel fuel has been increasing rapidly.   Historically diesel was less expensive than gasoline.   These increases in prices also have had a dramatic adverse effect on Debtors' business. While these costs have escalated sharply Debtors' ability to pass those increased costs along to its customers has been limited due to competition and customer resistance.

d) Competition: Debtors face strong competition from other trucking companies that are substantially larger, better financed and that have years of experience in the transportation business.  T hese organizations which can sustain lower rates for a longer period of time are fully using this to their advantage and purposefully decreasing rates to an unsustainable amount to rid the industry of smaller carriers.

e) Department of Transportation and Energy Compliance: Although Debtors pride themselves in their safety and energy standards, new laws and regulations continue to threaten carriers' profit margin.   The Department of Transportation continues to threaten decreasing the drivers' allowed hours of service.   This greatly impacts resource utilization causing our drivers and equipment to earn less miles.   Although it is in our best interest to increase our miles per gallon, it requires up front investments to continue to satisfy the new energy standards.  T he economic downturn has caused trucking companies' profit margin to continue to decrease, making it more difficult to utilize cash flow to implement energy efficient improvements.

### F. Executory Contracts and Unexpired Leases

The Plan, Section 6.01 lists all executory contracts and unexpired leases that the Debtors will assume under the Plan.   Assumption means that the Debtors have elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.   Section 6.01 also lists how the Debtors will cure

and compensate the other party to such contract or lease for any such defaults.[5]

     If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

     All executory contracts and unexpired leases that are not listed in Exhibit 5.1 will be rejected under the Plan.   Consult your advisor or attorney for more specific information about particular contracts or leases.

     If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

     ***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is 30 days after the effective date of the plan..***   Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### G.  Tax Consequences of Plan

     ***Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

     It is not practical nor is it intended by this general discussion to present herein a detailed explanation of the Federal Income Tax aspects of this Plan .   In addition, although the following discussion is based upon the relevant provisions of the Internal Revenue Code of 1954, as amended (the "Code"), regulations promulgated by the Internal Revenue Service pursuant to the Code ("Regulations") the Bankruptcy Tax Act of 1986 (as amended), the Revenue Reconciliation Act of 1993, the Economic Growth and Tax Reconciliation Act of 2001, the Jobs and Growth Tax Relief Reconciliation Act of 2003 and judicial administrative interpretations thereof presently in effect, in some cases the proper interpretation of such authority or their application to particular factual situations is unclear. Moreover, each Creditor is cautioned that this discussion is based in part on the provision of the Tax Reform Acts of 1984, 1986, 1993, 2001 and 2003 which have been enacted into law, and as to which, there are, to date, varying judicial or administrative interpretations.   As a result of the foregoing, under current law, there is substantial uncertainty surrounding many of the tax consequences applicable to the various payments to be made under this Plan .   Additionally, Creditors are further advised that no ruling has been requested or obtained from the

---

[5]  The Debtors will assume a 15 year Lease entered into in March, 2010 between Delbert & Rhonda McElroy (Tenant) and Salomon M. Cordova & Aldo H. Cordova (Landlord) for a tower that does not belong to the Landlord.

Internal Revenue Service (the "IRS") nor has an opinion of counsel been obtained by the Debtors with respect to the tax aspect of this Plan . For all of the foregoing reasons and because the Federal Income Tax consequences of this Plan will depend in part upon certain factual matters unknown to the Debtors relating to each particular creditor, **EACH CREDITOR IS URGED TO SEEK ADVICE FROM HIS OR ITS OWN TAX ADVISER WITH RESPECT TO THE FEDERAL INCOME TAX CONSEQUENCES OF THIS PLAN , AND, IF APPLICABLE, STATE AND LOCAL TAX CONSEQUENCES.**

## IV.     <u>CONFIRMATION REQUIREMENTS AND PROCEDURES</u>

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 2 through 7 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that class 1 is unimpaired and that holders of claims in that class, therefore, do not have the right to vote to accept or reject the Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtors have scheduled the claim on the Debtors' schedules, unless the claim has been scheduled as disputed, contingent or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal

Rules of Bankruptcy Procedure.

> *The deadline for filing a proof of claim in this case was February 12, 2013, however the Debtors, as to the three new litigation matters, discussed elsewhere herein, will ask the Court for a limited period within which such claimants may file claims.*

### 2. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is Not Entitled to Vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

holders of claims and equity interests that have been disallowed by an order of the Court;

holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

holders of claims or equity interests in unimpaired classes;

holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

holders of claims or equity interest in classes that do not receive or retain any value under the Plan;

administrative expenses.

> *Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.*

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## B.  Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2].

### 1.  *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2.  *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.   A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

## C.  Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.   A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

## D.  Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit F.

### 2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information.   Those projections are listed in Exhibit G.

The Plan Proponent's financial projections show that the Debtors will have an aggregate annual personal income of, after paying for necessary living expenses and post-confirmation taxes, of $ 33,914.96.   The Debtors are unable to estimate when the final plan payment will occur because of the conditions set forth in class 2.

At the time of the filing of the present case, Debtors business had been reduced to one operating semi truck. Debtors have been able to repair one additional truck since the filing of their case, which will allow them to increase their revenue. Additionally, in May 2013, Debtors rented a portion of the lot in which their business operates, which has brought additional income of $600.00 per month. The potential rental price of the portion of the lot available to rent is $1,200.00 per month and Debtors intend to collect additional rental revenue in the future.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## V.        EFFECT OF CONFIRMATION OF PLAN

### A.  Discharge of the Debtors

Discharge.   On the effective date of the Plan, the Debtors shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code.   However, the Debtors shall not be discharged from any debt imposed by the Plan.   After the effective date of the Plan your claims against the Debtors will be limited to the debts imposed by the Plan.

### B.  Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.   However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Dated:     July 26, 2013.

Respectfully submitted,


  /s/  Aldo  Humberto Cordova
Aldo Humberto Cordova


   /s/  Ivonne Ruvacalba Cordova
Ivonne Ruvacalba Cordova


DIAMOND LAW


By:    /s/ Sidney J. Diamond
         Sidney J. Diamond
         Bar # 05803000
         3800 N. Mesa, St., Suite 3-B
         El Paso, Texas 79902
         (915) 532-3327  V oice
         (915) 532-3355   F ax
         Sidney@sidneydiamond.com
         Attorneys for Debtors